CONNOR ET AL. *v.* JOHNSON ET AL.

Decided June 3, 1971

PER CURIAM.

On May 14, 1971, a three-judge District Court, convened in the Southern District of Mississippi, invalidated the Mississippi Legislature's latest reapportionment statute as allowing impermissibly large variations among House and Senate districts. The parties were requested by the court to submit suggested plans, and the applicants did so on May 17. All four plans suggested by applicants utilized single-member districts ex-

clusively in Hinds County. The following day, May 18, the court issued its own plan, which included single- and multi-member districts in each House; Hinds County was constituted as a multi-member district electing five senators and 12 representatives. The court expressed some reluctance over use of multi-member districts in counties electing four or more senators or representatives, saying: "[I]t would be ideal if [such counties] could be divided into districts, for the election of one member [from] the district." However, in view of the June 4, 1971, deadline for filing notices of candidacy, the court concluded that: "[W]ith the time left available it is a matter of sheer impossibility to obtain dependable data, population figures, boundary locations, etc. so as fairly and correctly to divide these counties into districts for the election of single members of the Senate or the House in time for the elections of 1971." The court promised to appoint a special master in January 1972 to investigate the possibility of single-member districts for the general elections of 1975 and 1979.

Applicants moved the District Court to stay its order. The motion was denied on May 24. Applicants have now applied to this Court for a stay of the District Court's order and for an extension of the June 4 filing deadline until the District Court shall have provided single-member districts in Hinds County, or until the Attorney General or the District Court for the District of Columbia approves the District Court's apportionment plan under Section 5 of the Voting Rights Act of 1965, 79 Stat. 439, 42 U. S. C. § 1973c (1964 ed., Supp. V).

Insofar as applicants ask relief under the Voting Rights Act the motion for stay is denied. A decree of the United States District Court is not within reach of Section 5 of the Voting Rights Act. However, other reasons lead us to grant the motion to the extent indicated below.

In failing to devise single-member districts, the court was under the belief that insufficient time remained until June 4, the deadline for the filing of notices of candidacy. Yet at that time June 4 was 17 days away and, according to an uncontradicted statement in the brief supporting this motion, the applicants were able to formulate and offer to the court four single-member district plans for Hinds County in the space of three days. Also according to uncontradicted statements, these plans were based on data which included county maps showing existing political subdivisions, the supervisory districts used by the Census Bureau for the taking of the 1970 census, official 1970 Census Bureau "final population counts," and "computer print-out from Census Bureau official computer tapes showing total and white/Negro population by census enumeration districts." Applicants also assert that no other population figures will subsequently become available.

The District Court's judgment was that single-member districting would be "ideal" for Hinds County. We agree that when district courts are forced to fashion apportionment plans, single-member districts are preferable to large multi-member districts as a general matter. Furthermore, given the census information apparently available and the dispatch with which the applicants devised suggested plans for the District Court, it is our view that, on this record, the District Court had ample time to devise single-member districts for Hinds County prior to the June 4 filing deadline. While meeting the June 4 date is no longer possible, there is nothing before us to suggest any insurmountable barrier to devising such a plan by June 14, 1971. Therefore the motion for stay is granted and the judgment below is stayed until June 14. The District Court is instructed, absent insurmountable difficulties, to devise and put into effect a single-member district plan for Hinds County by that date.

In light of this disposition, the District Court is directed to extend the June 4 filing date for legislative candidates from Hinds County to an appropriate date so that those candidates and the State of Mississippi may act in light of the new districts into which Hinds County will be divided.

*It is so ordered.*

THE CHIEF JUSTICE, MR. JUSTICE BLACK, and MR. JUSTICE HARLAN dissent and reserve the right to file an opinion to that effect.

MR. JUSTICE BLACK, with whom THE CHIEF JUSTICE and MR. JUSTICE HARLAN join, dissenting.*

I strongly dissent from the stay order of June 3, 1971, more particularly as it relates to a postponement of the Hinds County, Mississippi, election. Under Mississippi law and the decrees of the three-judge court, Hinds County candidates for the state legislature would be elected from the county at large. But this Court—at the eleventh hour—now commands the District Court to change its decree and divide Hinds County into single-member districts so that each voter there can vote for only one state representative and one state senator. Under Mississippi law, the final filing date for candidates is June 4. This Court's order now postpones that deadline to "an appropriate date" after June 14. The order compels candidates who had expected to run county-wide to change their plans completely and to campaign only in a particular district which is part of the county. The confusion is compounded because the candidates do not yet know where the district lines will be drawn. Any candidate would be dumbfounded by the thought that his old district had suddenly been abolished on the eve

---

*[NOTE: This opinion was filed June 4, 1971.]

of the filing date and he must now run in a new but unspecified district which is still only a dream in the eyes of the United States Supreme Court sitting a thousand miles from Hinds County.

This abrupt order by the Court is all the more astounding since this Court has consistently approved multi-member districts for state legislatures. *Burnette* v. *Davis,* 382 U. S. 42 (1965); *Fortson* v. *Dorsey,* 379 U. S. 433 (1965); *Burns* v. *Richardson,* 384 U. S. 73 (1966).

I do not deny that this Court has the sheer, raw power to impose single-member districts on Hinds County. I do, however, strongly object to this Court's exercising that power by throwing a monkey wrench into the county election procedure at this late date.

Above all else, we should remember that no one of us is a resident of Mississippi or the Judicial Circuit of which Mississippi is a part. The judges who entered this order do reside in that Circuit, they heard the evidence and oral arguments, and examined the statistics. We should not forget they concluded that:

> "There is no evading the fact that with the time left available it is a matter of sheer impossibility to obtain dependable data, population figures, boundary locations, etc. so as fairly and correctly to divide these counties into districts for the election of single members of the Senate or the House in time for the elections of 1971."

The holding of a county election is a difficult, intricate, and time-consuming process. Orders must be filed, ballots printed, campaigning plans laid, and officials appointed. Many different procedures must be carefully synchronized if the elections are to be efficiently and fairly administered. But today the Court plunges into an unfamiliar arena and creates utter confusion for the voters, candidates, and officials of Hinds County by

subjecting them to the judicial branch of Federal Government.

Needless to say I completely agree with the holding of the majority that a reapportionment plan formulated and ordered by a federal district court need not be approved by the United States Attorney General or the United States District Court for the District of Columbia. Under our constitutional system it would be strange indeed to construe § 5 of the Voting Rights Act of 1965, 79 Stat. 439, 42 U. S. C. § 1973c (1964 ed., Supp. V), to require that actions of a federal court be stayed and reviewed by the Attorney General or the United States District Court for the District of Columbia.

I dissent.