**D. L. CONNER et al., Plaintiffs,**

v.

**BOARD OF SUPERVISORS OF OKTIB-BEHA COUNTY, MISSISSIPPI, et al., Defendants.**

**No. EC 71-96-S.**

United States District Court,
N. D. Mississippi, E. D.

Nov. 10, 1971.

2. Comment, 45 Texas L.Rev. 1015 (1967); Shapo, Constitutional Tort: Monroe v. Pape and the Frontiers Beyond, 60 Nw.U. L.Rev. 277 (1965).

McLemore & Ward, Greenville, Miss., Philip J. Harter, of Shea & Gardner, Washington, D. C., George P. Taylor, Jackson, Miss., H. M. Ray, U. S. Atty., Oxford, Miss., David L. Norman and Jeremy I. Schwartz, Dept. of Justice, Washington, D. C., for plaintiffs.

P. L. Douglas, Starkville, Miss., for defendants.

Before COLEMAN, Circuit Judge, and KEADY and SMITH, District Judges.

**PER CURIAM:**

Plaintiffs are black, voters and taxpayers of Oktibbeha County, Mississippi. Plaintiffs filed this action on June 1, 1971, seeking declaratory and injunctive relief against defendants, the Board of Supervisors and Election Commission of said county.

The complaint alleges, inter alia, that prior to the end of the year 1966 the five supervisor districts of the county contained population characteristics, based on the 1960 census figures, as follows:

| District | Whites | Blacks | Blacks as % of Popul. | Total Pop. of District | Pop. of Dist. as % Total City Population |
|---|---|---|---|---|---|
| 1 | 11,063 | 5,226 | 32.1 | 16,289 | 62.2 |
| 2 | 480 | 2,027 | 80.9 | 2,507 | 9.6 |
| 3 | 1,515 | 1,062 | 41.2 | 2,577 | 9.8 |
| 4 | 1,388 | 661 | 32.3 | 2,049 | 7.8 |
| 5 | 294 | 2,459 | 89.3 | 2,753 | 10.5 |
| Totals | 14,740 | 11,435 | 43.7 | 26,175 | 99.9 |

Additionally, the complaint alleges that defendant Board of Supervisors in 1966 redistricted the county and altered the districts in the county by transferring a predominantly white portion of the City of Starkville, the county seat of the county, from District One to either District Two or District Five; that before the changes were made the majority of the population in each of Districts Two and Five was black; and, after the changes, the majority of the population in each of said districts was white, thereby diluting the strength of the black vote in each of said districts.

The complaint charges that the changes made in 1966 by defendant Board of Supervisors constituted a standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1964, for which reason the changes were subject to the

provisions of Section 5 of the Voting Rights Act of 1965, 42 U.S.C.A. § 1973c, Oktibbeha County, Mississippi, being a political subdivision covered by the Voting Rights Act of 1965 by virtue of 42 U.S.C.A. § 1973b(a).[1] The complaint also charges that defendants did not comply with the provisions of Section 5 of the Voting Rights Act of 1965, 42 U.S.C.A. § 1973c, in that, before placing the redistricting plan into effect, defendants did not submit the plan to the Attorney General of the United States, nor did defendants obtain a declaratory judgment in the United States District Court for the District of Columbia that the plan did not have the purpose and would not have the effect of denying or abridging the right to vote on account of race or color, as said Section 5 requires.

Plaintiffs sought to restrain and enjoin defendants from conducting the 1971 primary and general elections in the county because of the alleged illegality of the redistricting of the county.[2]

Plaintiffs requested the constitution of a three-Judge District Court to hear the case, under the authority of 42 U.S.C.A. § 1973c, which provides "Any action under this section shall be heard and determined by a court of three judges in accordance with the provisions of section 2284 of Title 28 and any appeal shall lie to the Supreme Court".

The complaint alleges that the action arises under the Fifteenth Amendment to the Constitution of the United States, Section 5 of the Voting Rights Act of 1965 (42 U.S.C.A. § 1973c) and 42 U.S.C.A. §§ 1981 and 1983. Jurisdiction is said to be bottomed on 28 U.S.C.A. §§ 1343(3) and 1343(4).

Plaintiffs moved the court for the issuance of a temporary restraining order and preliminary injunction. The judge to whom the case was assigned, set the matter down for hearing on June 9, 1971. Defendants appeared in person and by counsel, and filed a motion to dismiss. One ground of the motion alleged that the redistricting plan adopted by defendants and currently in effect in the county resulted from an order of this court entered June 7, 1967, in Civil Action EC 6642, styled "John Curtis Page, et al., Plaintiffs v. Oktibbeha County Board of Supervisors, et al., Defendants". A true copy of the June 7, 1967 order, entered by the late Honorable Claude F. Clayton, District Judge, was exhibited to the motion. An examination of the order and the jacket file in said action reflects that the order was entered on the complaint filed by John Curtis Page, et al., qualified voters of Oktibbeha County, against the Board of Supervisors of the county seeking to compel the Board to redistrict the county in such manner as to comply with the one man-one vote constitutional requirement.[3] The order recites that the complaint was filed May 9, 1966; that motions to dismiss were filed by several defendants on May 31, 1966; that the motions to dismiss were amended on December 20, 1966, to reflect that the Board of Supervisors of the county, in response to the prayer of the complaint, on December 5, 1966, by proper resolution adopted and spread upon the Minutes of the Board, had adopted a plan for the redistricting of the county in accordance with an equitable distribution of population among the several Supervisors' districts. After considering the redistricting plan, Judge Clayton specifically held and adjudicated the following:

"The Court, after having considered the action of the Board of Supervisors

1. The alterations were made in 1966, prior to the amendment of Sections 1973b(a) and 1973c, by Pub.L. 91–285, June 22, 1970, 84 Stat. 315.

2. The Democratic Primary Elections, usually tantamount to election in Mississippi, were held in August 1971, and the general elections on November 2, 1971.

3. The "one man-one vote" doctrine made applicable to state legislatures by Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964) was extended to county boards, such as defendant Board of Supervisors, in Avery v. Midland County, Texas, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968).

in adopting said resolution of December 5, 1966, and finding that such action was taken in the utmost good faith to meet the Plaintiffs' complaint;

That Defendants properly advised this Court of said action;

And that Defendants have this day moved the Court for leave to withdraw their motions to dismiss and have moved the Court to adopt and approve the plan of re-districting aforesaid, as set forth in Exhibit 1 to the Defendants' motion to approve plan; and,

The Court having further considered said plan of re-districting and being mindful of the public interest involved in view of the late hour for qualification of candidates for the up coming political primaries, and desiring to avoid the confusion and uncertainty that would result in further delay of the adoption of a feasible plan of re-districting or elections and that to proceed otherwise would cause confusion and uncertainty in the mind of the public, and the Court being aware of no invidious discrimination in the plan before it;

IT IS THEREFORE ORDERED AND ADJUDGED that the plan of re-districting of Oktibbeha County contained in Exhibit 1 to the Defendants' motion to approve plan is hereby adopted and approved, and such Exhibit 1 which contains a metes and bounds description of the boundaries of the respective Supervisors' Districts is incorporated herein and made a part of this order by reference."

After hearing plaintiffs' motion for a temporary restraining order and defendants' motion to dismiss, the single-Judge Court denied the motion for a temporary restraining order, and carried with the case the motion to dismiss for determination by the three-Judge Court to be thereafter constituted.

In due course the three-Judge District Court was duly constituted by the Chief Judge of the Circuit, pursuant to the provisions of 28 U.S.C.A. § 2284.

After the constitution of the three-Judge District Court and on July 13, 1971 the United States was permitted to file a memorandum as Amicus Curiae because of its interest in the resolution of the questions involving the scope and meaning of Section 5 of the Voting Rights Act of 1965 (42 U.S.C.A. § 1973c).

An amended complaint was filed July 20, 1971, before a responsive pleading had been filed by defendants to the original complaint. The Democratic Executive Committee of Oktibbeha County was made an additional party to the complaint. In addition to the averments of the original complaint, plaintiffs allege that the redistricting plan approved by Judge Clayton in Page v. Oktibbeha County Board of Supervisors, No. EC 6642 (N.D.Miss.E.Div.) mentioned above is not effective because the plan was neither submitted to the Attorney General nor was a declaratory judgment obtained from the United States District Court for the District of Columbia.

Plaintiffs attack the plan approved by Judge Clayton on numerous grounds and contend that they were not members of the class represented by plaintiffs in that action, and, consequently are not bound by the decree. For reasons that will be apparent by our disposition of this action it is not necessary for us to reach the merits of plaintiffs' complaint in regard to the force or effect of Judge Clayton's order aforesaid.

Defendants have filed a motion to dismiss the amended complaint asserting that Section 5 of the Voting Rights Act of 1965 (42 U.S.C.A. 1973c) does not reach or control the actions of a United States District Court, and that the amended complaint does not state a cause of action.

The plaintiffs filed a second amendment to the complaint on September 8, 1971, pursuant to the court's order permitting the filing thereof. The second amendment to the complaint attacks the constitutionality of the redistricting plan approved by the court in 1967 on the ground that the districts in the coun-

ty are malapportioned according to the 1970 official census.

This three-Judge District Court convened on September 27, 1971, to hear the motion to dismiss filed by defendants. The motion was submitted for the court's determination on stipulations, briefs and argument of counsel.

At the outset it is necessary for the court to determine whether this is a proper case for a three-Judge Court rather than a one-Judge Court. The authority, if any, for the constitution of a three-Judge Court to determine the issues presented by the complaint, as amended, is contained in Section 5 of the Voting Rights Act of 1965. If the court is not within the reach of Section 5, the three-Judge Court was improvidently constituted and should be dissolved.

Plaintiffs contend that the redistricting plan approved and adopted by the District Court in 1967 is not effective because the plan has not been validated pursuant to the provisions of Section 5 of the Voting Rights Act of 1965.

In considering this contention, we note that the plan formulated by the Board of Supervisors in 1966 was drawn and adopted as the result of the action brought by citizens of the county to compel the redistricting of the county in such manner as to comply with the "one man-one vote" mandate of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States. The plan was not initiated or adopted by the Board of Supervisors of its own accord, but rather under a decree of the court.

It must be conceded that if the plan had been adopted by the Board on its own initiative and not as the result of a court directive the plan would not become effective until it is approved pursuant to Section 5 of the Voting Rights Act of 1965. Allen v. State Board of Elections, 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969). See also, Perkins v. Matthews, 400 U.S. 379, 91 S.Ct. 431, 27 L.Ed.2d 476 (1971) and Dyer v. Love, 307 F.Supp. 974 (N.D.Miss.1969).

In the case sub judice, however, we are not dealing with a voluntary out-of-court redistricting plan, but with one that has been adopted pursuant to the decree of a United States District Court.

■ It is extremely difficult for us to envision that Congress intended, by the enactment of Section 5 of the Voting Rights Act, to give the Executive Department of the Government, through the Attorney General, the right to veto a decree of a district court, when such court is sitting as a court of equity, and possessed of broad powers to protect the constitutional rights of litigants seeking its protection. See Sheffield v. Itawamba County Board of Supervisors, 439 F.2d 35 (5th Cir. 1971).

The Supreme Court in Connor v. Johnson, 402 U.S. 690, 691, 91 S.Ct. 1760, 1763, 29 L.Ed.2d 268 (1971) said "A decree of the United States District Court is not within reach of Section 5 of the Voting Rights Act". We are in accord with this view.

■■ Neither are we convinced that Congress intended to make changes in voting standards, practices or procedures, ordered by the United States District Courts for the states affected by the Act, inoperative, until a favorable determination of a declaratory action has been obtained in the United States District Court for the District of Columbia by the political subdivision affected by the decree. We adopt as our own the language of the late Mr. Justice Black in his dissenting opinion in *Connor,* where he said:

"Needless to say I completely agree with the holding of the majority that a reapportionment plan formulated and ordered by a federal district court need not be approved by the United States Attorney General or the United States District Court for the District of Columbia. Under our constitutional system it would be strange indeed to construe § 5 of the Voting Rights Act of 1965, 79 Stat. 439, 42 U.S.C. § 1973c (1964 ed. Supp. V), to require that actions of a federal court

be stayed and reviewed by the Attorney General or the United States District Court for the District of Columbia.[4] ”

The jurisdiction of this court depends upon Section 5 of the Voting Rights Act of 1965. Since neither the court's decree in *Page* nor the court's action in the case sub judice is within the reach of Section 5, this action must be dismissed for lack of jurisdiction and the court dissolved.

This dismissal is without prejudice, however, to the right of plaintiffs or other members of their class to institute in the district court for determination by a single judge a new action to test the constitutionality of the districts or beats as they now exist in Oktibbeha County.

We believe that it serves the best interest of all parties that a new action be filed where the pleadings can be simplified and directed to the justiciable issues involved.

An appropriate order is being entered by the court.