Daniel CHAPMAN and Jacque Stockman, Plaintiffs,

v.

Ben MEIER, Secretary of State for the State of North Dakota, Defendant.

Civ. No. 4664.

United States District Court,
D. North Dakota,
Southeastern Division.

June 30, 1972.

John D. Kelly, Wattam, Vogel, Vogel & Peterson, Fargo, N. D., for plaintiffs.

Paul M. Sand, First Asst. Atty. Gen., Allen I. Olson, Atty. Gen., State of North Dakota, Bismarck, N. D., for defendant.

Before BRIGHT, Circuit Judge, BENSON, Chief District Judge, and VAN SICKLE, District Judge.

## MEMORANDUM OPINION
## AND ORDER

PER CURIAM.

In this action the plaintiffs seek: 1) our declaration that the 1965 apportionment plan ordered by the Federal Court for the North Dakota State Legislature is no longer valid under the United States Constitution; 2) a permanent injunction restraining the defendant from administering the election laws of North Dakota under the existing 1965 apportionment plan; and 3) an order establishing a constitutionally valid apportionment plan for the North Dakota State Legislative Assembly based upon the 1970 federal decennial census, including a provision for single-member legislative districts.

Following the presentation of evidence and oral argument on May 18, 1972, we entered an order, dated May 22, 1972, in which we found, inter alia, that the plaintiffs have made a legally sufficient showing that the 1965 legislative apportionment plan for the State of North Dakota no longer meets Constitutional standards, in the light of the 1970 census statistics. We determined that we would reapportion the legislative districts in compliance with the requirements of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution in time to be effective for the 1972 primary and general elections. We also appointed Mr. R. R. Smith of Grand Forks, Mr. Richard Dobson of Minot, and Mr. Thomas K. Ostenson of Fargo, all in North Dakota, to serve as Special Masters to assist the court in formulating and adopting an appropriate reapportionment plan.

Since the election machinery in North Dakota is about to be set in motion,[1] we have been particularly concerned over the short period of time yet remaining before candidates for legislative office must file under the statutes of North Dakota. We have been mindful of the fact that a material change in legislative districts in North Dakota, at this late date, could have a seriously disruptive effect upon the selection of legislative candidates for the primary election, as well as upon the conduct of the general election of state legislators. For this reason we included in our order of May 22 guidelines for the Masters in their preparation of reapportionment proposals. Consistent with those guidelines, we have also tailored our relief in this case so as to cause minimum interference with the procedures leading to the selection of members of the state legislature by means of 1972 elections.

The Masters met with us on June 20 and 21, and presented to us eight separate plans of reapportionment which they had either created themselves or had submitted to them by other interested persons. We have discussed and analyzed each of these plans with the Masters in light of North Dakota population statistics of which we have taken judicial notice.

██ We find that since 1960 there has been a general population shift from rural to urban centers in North Dakota. In addition, in the decade between 1960 and 1970, as shown by the census, the state has decreased in population from 632,446 to 617,761. Finally, the United States Air Force personnel and related civilian personnel affiliated with the Minot and Grand Forks Air Force Bases, both of which have come into existence since 1960, have increased the population appreciably in the Minot and Grand Forks areas. These changes and shifts in population have created constitutionally impermissible variations in population among the existing legislative districts of North Dakota. For example,

---

1. Section 16–04–04, NDCC, provides, inter alia, that every legislative candidate shall file a petition for office with the county auditor of the county in which he resides not more than sixty days nor less than forty days prior to a primary election. Section 16–04–01, NDCC, provides that the primary election be held on the first Tuesday in September of every year in which a general election occurs. Thus, the primary election in North Dakota this year will be held on Tuesday, September 5. Petitions for legislative offices must therefore be filed prior to July 27, 1972, and not before July 7, 1972.

the most populous district, present District No. 19 (part Grand Forks County), shows a population of 21,102, while the least populous district, District No. 38 (Hettinger, part Adams, and part Stark counties), shows a population of 8,997, or a total deviation of 96 percent from equal senatorial representation.[2] Because the North Dakota Legislature has failed to reapportion itself, in order to correct inequality of representation, we are required to fashion a legislative apportionment plan which will tend to equalize the population in each of the legislative districts in order to comply with the "one-man, one-vote" concept embodied in the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. See Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L. Ed.2d 663 (1962).

Mr. Richard Dobson has submitted a proposed reapportionment plan which, in its amended form, is filed with this order as Appendix "A". This amended plan, which we will refer to as the Dobson Plan, provides for a decrease in the number of legislative districts from thirty-nine to thirty-eight,[3] but an increase in the number of senators from forty-nine to fifty-one and the number of representatives from ninety-eight to one hundred two. The Dobson Plan takes into account the general population shifts in North Dakota, while maintaining the integrity of county boundaries except in ten counties and makes limited alterations in boundaries of existing legislative districts. The plan substantially reduces the disproportionate representation which would result from elections under the existing apportionment of North Dakota. At the same time, the Dobson Plan causes a minimum disruption in the election processes for the 1972 primary and general elections. The plan as amended recognizes that the interests of those persons residing on the Air Bases at Minot and Grand Forks are more closely aligned with urban rather than with rural interest, and, therefore, includes those populations within the nearby urban district. To avoid major change in the present legislative district boundaries, the Dobson Plan provides for an increase in the size of the legislature. In this way, the number of inhabitants attributable to each senator for equal representation is reduced to a figure compatible with the present populations of the rural districts, thereby avoiding the substantial remapping of these districts which would have been necessary if the number of senators had been kept at 49.[4]

2. With 49 senators in the present North Dakota legislature, and a 1970 total population of 617,761, each senator would represent 12,607 people for exact equality of representation. Under the 1965 plan of apportionment and in light of 1970 census figures, population deviations vary from 67% greater than the standard to 29% less than the standard, thus giving a total deviation of 96%.

3. The Dobson Plan, while denominating the legislative districts one through thirty-nine, in fact represents only thirty-eight districts since the amended plan omits the use of number thirteen to represent any legislative district.

4. The following statistical comparison is made between the 1965 court plan and the Dobson Plan:

|  | 1965 Plan | Dobson Plan |
|---|---|---|
| Number of Districts | 39 | 38 |
| Number of Senators | 49 | 51 |
| Number of Representatives | 98 | 102 |
| County Lines Broken | 13 | 10 |
| Av. pop. per senator | 12,907 | 12,113 |
| Most populous district | 14,214 | 13,176 |
| Least populous district | 11,339 | 10,728 |
| Pct. deviation over average | 10.1% | 8.8% |
| Pct. deviation under average | 12.1% | 11.4% |
| Deviation ratio | 1.25–1 | 1.23–1 |

We recognize certain weaknesses in the Dobson Plan, namely, (1) some variance in population among the legislative districts, which, in a few instances, seems substantial; (2) an increase in the size of the legislature, notwithstanding that the state has lost population over the past decade; and (3) a continuation of multi-member legislative districts.

We briefly comment on the continuation of the five multi-member senatorial districts in which are located the cities of Fargo, Grand Forks, Minot, Bismarck, and Jamestown. In the most populous 21st district, encompassing the Fargo area, voters may be called upon to elect fifteen members of the legislative assembly to represent that district, five to serve in the Senate and ten to serve in the House of Representatives. In each of the other multi-member districts, the electors may also be called upon to elect a substantial number of representatives at a single election. If each of the major political parties endorses a full slate of candidates, the electorate in the largest multi-member district could be called upon to judge the qualifications of at least thirty candidates for state legislative office. In such circumstances, the task confronting a voter in making a considered choice among individual candidates would appear to be most formidable.

■ The five multi-member legislative districts were created by the Federal District Court in Paulson v. Meier, 246 F.Supp. 36 (D.N.D.1965), and not by enactment of the Legislative Assembly. In light of subsequent Supreme Court pronouncements, we believe it would be improper for this Court to permit their continuation in a court-fashioned plan. In Connor v. Johnson, 402 U.S. 690, 91 S.Ct. 1760, 29 L.Ed.2d 268 (1971), the Court stated:

> * * * (W)hen district courts are asked to fashion apportionment plans, single-member districts are preferable to large multi-member districts as a

general matter. *Id.*, at 692, 91 S.Ct. at 1762.

The Supreme Court subsequently re-emphasized this ruling in Connor v. Williams, 404 U.S. 549, 551, 92 S.Ct. 656, 30 L.Ed.2d 704 (1972). We feel constrained to permit multi-member districts to continue during the 1972 elections, however, to avoid extreme disruptions in the elective processes. We recognize that political party organizational structure has been formed, for elections subsequent to the 1965 apportionment decision, along legislative district lines. *See generally* Ch. 16–17 NDCC. We recognize that it takes considerable time for members of a political party to organize and operate effectively for the benefit of the electorate, following a change in district boundaries. We think it inappropriate, therefore, to change the method of selecting the members of the legislative assembly in these multi-member districts at this late. date in light of the confusion which such a change would likely precipitate. We feel that the electorate will be better served by minimizing the confusion surrounding the impending elections, than it would be by the abolition of multi-member districts at this eleventh hour.

The Dobson Plan calls for an increase in representation in District No. 5 (Minot and vicinity and the Minot Air Force Base); in District 18 (Grand Forks city and vicinity and the Grand Forks Air Base); and in District 21 (Fargo and Southwest Fargo vicinities). Each of these districts is entitled to one additional senator and two additional representatives. In Districts 5 and 21, the electorate chose its senators for a four year term in 1970. To avoid any disruption in the election processes and the nature of the representation to which those districts are entitled, we direct only that the one additional senator and the two additional representatives shall be elected from each of these districts in 1972. The senators elected in

1970 from each of these odd numbered districts shall hold office for an additional two years, the period for which they were elected. The voters in District 18 (Grand Forks city and vicinity), an even numbered district, will, of course, be called upon in 1972 to choose all of their legislative representation, including the one additional senator and the two additional representatives provided for by the Dobson Plan.

■ Senators elected in 1970 in the remaining odd numbered districts would ordinarily be entitled to serve out a four year term. We have made substantial changes, however, in the composition of the former 3rd, 7th, 27th, and 31st legislative districts,[5] and we have eliminated any designation of a 13th legislative district, that district having been incorporated into other districts. Because of these changes, we direct that the senators presently serving these odd numbered legislative districts under the 1965 apportionment, namely the 3rd, 7th, 13th, 27th, and 31st districts, shall be entitled to hold their present offices only until December 1, 1972. See Section 41, N.D.Constitution, as amended. We order and direct, therefore, that in these senate districts numbered 3, 7, (omitting 13 for reasons previously stated), 27 and 31 there shall be an election of a state senator in 1972 to represent said districts as reconstituted under the Dobson Plan. The senators elected from these particular odd-numbered districts shall serve for two years only, their terms ending at the same time as the terms of present holdover senators from other odd numbered districts.

All other senators now serving in *odd-numbered* districts may continue to serve out their term of office since the districts which they represent have not been materially altered under the Dobson Plan. We perceive no valid reason,

therefore, to hold another election in 1972 for state senator or senators in these districts.

No serious problems for the 1972 elections seem likely to arise from proposed changes in the boundaries of several *even-numbered* districts under the Dobson Plan since the terms of senators last elected from all even-numbered districts will expire this year. In each even-numbered district, as changed by the Dobson Plan, the electors in 1972 will select a senator or senators as well as house members to represent them during the next legislative session.

■ We approve the Dobson Plan of reapportionment at this time for the 1972 election only. This court retains jurisdiction of this cause for the purpose of adopting a different plan of reapportionment which will not be hampered by considerations of impending elections. We add a caveat regarding the candidates for state senate filing for a four-year term in the 1972 elections. In the event that we hereafter adopt a different plan of reapportionment which substantially changes the boundaries of legislative districts, it may be necessary to require that all state senators stand for election in 1974 as was the case in Paulson v. Meier, supra, 246 F.Supp. at page 52.

In our meetings and discussions of proposals for reapportionment, we have been favorably impressed with a plan proposed by Mr. Thomas K. Ostenson, one of the Masters. We refer to this plan as the Ostenson Plan and attach a copy to this order, for reference purposes, as Appendix "B".* We direct the Special Masters to give the Ostenson Plan further study and to report their recommendations to the court. The Special Masters should give additional consideration to creating legislative districts along the lines suggested in the

---

5. In 1970, Senator Christensen was elected from the third district, Senator Swedlund from the seventh district, Senator Doherty from the thirteenth district, Senator Just from the twenty-seventh district, and Senator Chesrown from the thirty-first district.

* The "Ostenson Plan" has been omitted from the opinion as published.

Ostenson Plan, the boundaries of which should remain as compact as possible while taking into account ease of travel within each district, as well as the substantial identity of economic and social interests among its inhabitants. The guiding principle of this study, of course, will be the requirements of equal representation mandated by the Fourteenth Amendment to the United States Constitution.

Additionally, the Masters are directed to modify the Ostenson Plan so as to eliminate the existing multi-member senate districts by creating senate districts or sub-districts each of which shall be represented by a single senator and two house members in the North Dakota Legislative Assembly.

We further direct the Masters to study the status of personnel assigned to the air bases near Grand Forks and Minot, and report pertinent statistical data relating to the number of persons on these bases, the usual length of residence of military and civilian personnel affiliated with them, the number of such persons claiming citizenship in North Dakota, as well as other data relating to their exercise of voting privileges in North Dakota elections.

We direct the Masters to file their report with this court at the earliest possible date, as parts thereof become completed. In any event, we request that the Masters submit a completed report on their work no later than November 10, 1972. The parties will be given until November 24, 1972, to file objections or to otherwise comment on the Masters' report. Interested persons may voice their views through counsel for each of the parties, John B. Kelley, P.O.Box 1389, Fargo, North Dakota, for the plaintiffs, or Mr. Paul M. Sand, Attorney General's Office, State Capitol, Bismarck, North Dakota, for the defendant. Interested persons may also request leave of the court to appear separately and be heard.

Accordingly, we adopt the Dobson Plan of reapportionment as set forth in Appendix A, and we order the defendant, Ben Meier, Secretary of State of the State of North Dakota, to supervise and conduct only the 1972 primary and general elections under that plan in conformity with this opinion.

Each member of the court reserves the right to file a statement of individual views.

BENSON, Chief District Judge.

For the reasons hereinafter set out, I have not signed the order of the Court in this case.

I concur in the adoption of the Dobson Plan. It appears to be the plan that inflicts the least disruption on the election procedures and follows most closely the guidelines which we included in our order of May 22, 1972. It is further my opinion that the Constitutional deficiencies which have arisen in the existing 1965 apportionment plan by reason of population shifts since 1960 are cured by the Dobson Plan, and I would not limit the plan to the 1972 elections. The majority of this Court refers to "weaknesses of the Dobson Plan", particularly the continuance of multi-member districts, and then cites the 21st District as an example. It is interesting to note that the Dobson Plan submitted to the Court provided for only four senators and eight representatives from the 21st District, but the Court eliminated Dobson Plan District 13 and made that district a part of District 21 in the amended Dobson Plan which it has adopted, thereby compounding the "weakness".

Multi-member districts have existed in North Dakota since 1965. The fact that multi-member districts were first created by the Federal District Court has no significance in my opinion, because the North Dakota Legislature has seen fit not to abolish multi-member districts. The Connors cases [1] relied on by the ma-

1. Connor v. Johnson, 402 U.S. 690, 91 S.Ct. 1760, 29 L.Ed.2d 268 (1971) ; Connor v. Wil-

liams, 404 U.S. 549, 551, 92 S.Ct. 656, 30 L. Ed.2d 704 (1972).

jority of this Court relate to a specific factual racial situation in Mississippi that is not applicable to North Dakota. Where there has been no showing that such districts in North Dakota operate to dilute or cancel the voting strength of racial or political groups, it would not be improper for this Court to permit their continuation. See Whitcomb v. Chavis, 403 U.S. 124, 91 S.Ct. 1858, 29 L.Ed.2d 363. (1971)

It may be the Ostenson Plan is desirable, but it is much more disruptive and goes beyond that which is needed to meet Constitutional standards. The desirability of the Ostenson Plan and the desirability of multiple member districts are questions for the Legislature and not for this Court. This Court should intrude into legislative matters only so far as is necessary to cure Constitutional deficiencies and no farther.

## APPENDIX A

The legislative districts of the state shall be formed, and senators and representatives shall be apportioned as follows:

1. The first legislative district shall consist of the City of Williston and Stony Creek and Williston Townships in Williams County, and shall be entitled to one senator and two representatives;

2. The second legislative district shall consist of Divide County and all of Williams County except that portion contained in the first legislative district, and shall be entitled to one senator and two representatives;

3. The third legislative district shall consist of Renville County and all of Ward County except that portion contained in the fifth legislative district, and shall be entitled to one senator and two representatives;

4. The fourth legislative district shall consist of Burke and Mountrail Counties, and shall be entitled to one senator and two representatives;

5. The fifth legislative district shall consist of the City of Minot, Afton, Burlington, Harrison, Nedrose, Sundre and Surrey Townships, and the area lying within the boundaries of the Minot Air Force Base (such area being attached to the aforesaid by that land lying within the right of way of U.S. Highway 83), all in Ward County, and shall be entitled to four senators and eight representatives;

6. The sixth legislative district shall consist of Bottineau County and Willow Creek, Mouse River, Meadow, Deep River, Pratt, Normal, Bantry, Layton, Little Deep, Grilley, Wager, Gilmore, Saline, Deering, Denbeigh, Riga, Egg Creek, Kottke Valley, Granville and Norwich Townships and Townships 157-75, 157-76 and 158-76 in McHenry County, and shall be entitled to one senator and two representatives;

7. The seventh legislative district shall consist of Pierce County and all of McHenry County except that portion contained in the sixth legislative district, and shall be entitled to one senator and two representatives;

8. The eighth legislative district shall consist of McLean County, and shall be entitled to one senator and two representatives;

9. The ninth legislative district shall consist of Rolette County, and shall be entitled to one senator and two representatives;

10. The tenth legislative district shall consist of Cavalier and Towner Counties, and shall be entitled to one senator and two representatives;

11. The eleventh legislative district shall consist of Pembina County, and shall be entitled to one senator and two representatives;

12. The twelfth legislative district shall consist of Benson and Eddy Counties, and shall be entitled to one senator and two representatives;

14. The fourteenth legislative district shall consist of Foster and Wells Coun-

ties, and shall be entitled to one senator and two representatives;

15. The fifteenth legislative district shall consist of Ramsey County, and shall be entitled to one senator and two representatives;

16. The sixteenth legislative district shall consist of St. Andrews, Martin, Farmington, Glenwood, Acton, Oakwood, Grafton, Fertile, Kensington, Pulaski, Harriston, Walshville and Ardoch Townships in Walsh County, and shall be entitled to one senator and two representatives;

17. The seventeenth legislative district shall consist of Nelson County and all of Walsh County except that portion contained in the sixteenth legislative district, and shall be entitled to one senator and two representatives;

18. The eighteenth legislative district shall consist of the City of Grand Forks, Grand Forks Township, and the area lying within the boundaries of Grand Forks Air Force Base (such area being attached to the aforesaid by that land lying within the right of way of U.S. Highway 2), all in Grand Forks County, and shall be entitled to four senators and eight representatives;

19. The nineteenth legislative district shall consist of all of Grand Forks County except that portion contained in the eighteenth legislative district, and shall be entitled to one senator and two representatives;

20. The twentieth legislative district shall consist of Traill County and Noble, Kinyon, Bell, Hunter, Wiser, Gardner, Gunkel and Arthur Townships in Cass County and shall be entitled to one senator and two representatives;

21. The twenty-first legislative district shall consist of the Cities of Fargo, West Fargo and West Fargo Industrial Park and Fargo, Barnes and Reed Townships, all in Cass County, and shall be entitled to five senators and ten representatives;

22. The twenty-second legislative district shall consist of all of Cass County except those portions contained in the twentieth and twenty-first legislative districts, and shall be entitled to one senator and two representatives;

23. The twenty-third legislative district shall consist of Griggs and Steele Counties and all of Barnes County except that portion contained in the twenty-fourth legislative district, and shall be entitled to one senator and two representatives;

24. The twenty-fourth legislative district shall consist of Oriska, Alta, Hobart, Springvale, Cuba, Marsh, Green, Hemen, Mansfield, Binghampton, Norma, Nelson, Skandia, Svea, Meadow Lake, Raritan, Thordenskjold, Oakhill, Rosebud, Spring Creek and Greenland Townships and Township 140–58 in Barnes County, and shall be entitled to one senator and two representatives;

25. The twenty-fifth legislative district shall consist of Eagle, Walcott, Colfax, Abercrombie, Nansen, Dwight, Ibsen, Antelope, Center, Mooreton, Barney, Summit, Brandenburg, Belford, Fairmount, DeVillo, Waldo, LaMars and Greendale Townships in Richland County, and shall be entitled to one senator and two representatives;

26. The twenty-sixth legislative district shall consist of Dickey and Sargent Counties, and shall be entitled to one senator and two representatives;

27. The twenty-seventh legislative district shall consist of Ransom County and all of Richland County except that portion contained in the twenty-fifth legislative district, and shall be entitled to one senator and two representatives;

28. The twenty-eighth legislative district shall consist of LaMoure and Logan Counties, and shall be entitled to one senator and two representatives;

29. The twenty-ninth legislative district shall consist of Stutsman County and shall be entitled to two senators and four representatives;

30. The thirtieth legislative district shall consist of Emmons and McIntosh

Counties, and shall be entitled to one senator and two representatives;

31. The thirty-first legislative district shall consist of Kidder and Sheridan Counties and all of Burleigh County except that portion contained in the thirty-second legislative district, and shall be entitled to one senator and two representatives;

32. The thirty-second legislative district shall consist of the City of Bismarck and the unorganized territory designated as Hay Creek, Lincoln and Fort Rice precincts (Townships 137–80, 138–80, 139–80 and 139–81) in Burleigh County, and shall be entitled to three senators and six representatives;

33. The thirty-third legislative district shall consist of Mercer and Oliver Counties and all of Morton County except those portions contained in the thirty-fourth and thirty-fifth legislative districts, and shall be entitled to one senator and two representatives;

34. The thirty-fourth legislative district shall consist of the City of Mandan and the unorganized territory designated as Crown Butte, Bindewald, Custer and Highland precincts (Townships 138–80, 138–81, 138–82, 139–81, 139–82, 140–81, 140–82, and 140–83) in Morton County, and shall be entitled to one senator and two representatives;

35. The thirty-fifth legislative district shall consist of Grant and Sioux Counties, and Harmon Township and the unorganized territory designated as Wenger, Rural, Sweetbriar, Dettman, Albrecht, Columbia, Sims, Doll, Olin, Faust, Hermes, Buchli, Huff, Little Heart, Fallon, Stone, Fort Rice, Odense, and New Hope precincts (Townships 133–82, 134–79, 134–80, 134–81, 134–82, 134–84, 135–79 through 84, 136–79 through 84, 137–79 through 87, 138–83 through 90, 139–83, and 139–84) in Morton County, and shall be entitled to one senator and two representatives;

36. The thirty-sixth legislative district shall consist of Dunn and McKenzie Counties, and shall be entitled to one senator and two representatives;

37. The thirty-seventh legislative district shall consist of the City of Dickinson in Stark County, and shall be entitled to one senator and two representatives;

38. The thirty-eighth legislative district shall consist of Adams and Hettinger Counties and all of Stark County except those portions contained in the thirty-seventh and thirty-ninth legislative districts and shall be entitled to one senator and two representatives; and

39. The thirty-ninth legislative district shall consist of Slope, Billings, Bowman, and Golden Valley Counties and South Heart, Slope and Ash Coulee Townships and Townships 137–96, 137–97, 137–98, 137–99, 138–96, 138–97, 138–98, 138–99, 139–96, 139–99, 140–96, 140–98, and 140–99 in Stark County, and shall be entitled to one senator and two representatives.