**STATE OF TEXAS**

v.

**UNITED STATES of America.**

**Civ. A. No. 91–2383.**

United States District Court, District of Columbia.

Feb. 25, 1992.

Renea Hicks, Javier Guajardo, Sp. Asst. Attys. Gen., Austin, Tex., for plaintiff.

Steven H. Rosenbaum, David Marblestone, Gerald W. Jones, Mark A. Posner, Voting Section, Civil Rights Div., Dept. of Justice, Washington, D.C., for defendant.

Jose Garza, George Korbel, Texas Rural Legal Aid, Inc., John N. McCamish, Jr., J. Patrick Deely, McCamish, Martin & Loeffler, Judith Sanders–Castro, Mexican American Legal Defense and Educ. Fund, San Antonio, Tex., James C. Harrington, Texas Civil Rights Project, Austin, Tex., G. Mario Moreno, Mark Menezes, Washington, D.C., for applicant intervenors.

## MEMORANDUM ORDER

Before WALD, Circuit Judge, and JOYCE HENS GREEN and SPORKIN, District Judges.

On February 5, 1992, plaintiff filed its Motion for Partial Summary Judgment (and for Oral Hearing and Expedited Consideration) with Supporting Legal Memorandum. On February 6, 1992, the court ordered defendant to submit a memorandum in response to plaintiff's motion. Defendant filed its Memorandum in Opposition to State of Texas' Motion for Partial Summary Judgment on February 13, 1992. Plaintiff filed a memorandum in reply on February 19, 1992.

Oral argument on plaintiff's motion was held on February 21, 1992 before the district court comprised of three judges in accordance with 28 U.S.C. § 2284 and 42 U.S.C. § 1973c. At the conclusion of oral argument, the matter was deemed submitted.

## I. BACKGROUND

On September 20, 1991, the State of Texas filed its complaint seeking relief under section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c (1988) ("section 5"). Specifically, the State sought preclearance of its redistricting plans that had been passed by the legislature during the summer of 1991. Although four plans—governing elections to the Texas House, Texas Senate, Texas Board of Education, and United States Congress—were originally the subject of this suit for declaratory judgment under section 5, only one of these—the Texas Senate plan—remains at issue.

Prior to the filing of this suit in September 1991, the State submitted its original Texas Senate plan—S.B. 31—to the Attorney General of the United States under the alternative preclearance procedures provided under section 5. According to the statute, the Attorney General had 60 days to object to any part of the proposed plan; if no objection were filed after 60 days, the plan would be precleared and the State would be free to begin implementing it. On the 59th day—October 7, 1991—the State notified the Attorney General that it was withdrawing S.B. 31 from consideration and submitting a different plan in its place.

The new plan submitted on October 8, 1991 was the result of a settlement signed the previous day between the Texas Attorney General and private plaintiffs in a state court proceeding challenging the S.B. 31 plan. *Quiroz v. Richards*, C.A. No. C–4395–91–F (332d Jud.Dist., Hidalgo County). This same settlement was entered three days later in a parallel state court

action. *Mena v. Richards*, C.A. No. C–454–91–F (332d Jud.Dist., Hidalgo County). The so-called *"Quiroz/Mena* settlement plan" governing elections to the Texas Senate was precleared by the Attorney General on November 18, 1991.

On December 17, 1991, the settlement reached in both *Quiroz* and *Mena* was invalidated by the Texas Supreme Court on the grounds that the trial judge abused his discretion in accepting the settlement without first conducting an adversary proceeding. The State thereafter refrained from further implementation of the *Quiroz/Mena* settlement plan.

On December 24, 1991, a three-judge federal court in the Western District of Texas—which had been convened to consider various constitutional and statutory challenges to the plans passed by the Texas legislature in the summer of 1991—entered judgment "to provide for a valid and equitable interim state legislative redistricting plan in the current circumstances in which no valid plan exists under federal law." *Terrazas v. Slagle*, Civil Nos. A–91–CA–425, –426, –428, Summary Opinion and Judgment at 23 (W.D.Tex. Dec. 24, 1991). The court ordered primary elections for the Texas Senate to be conducted pursuant to its own interim plan which it attached as an appendix to its ruling. This is the so-called *Terrazas* plan.

Meanwhile, the Governor called the Texas legislature into special session to cure the procedural deficiencies of the *Quiroz/Mena* settlement plan by means of legislative enactment. On January 8, 1992, the legislature adopted a new Senate plan ("S.B. 1"), and the Governor signed it into law. It is undisputed that S.B. 1 is substantively identical to the *Quiroz/Mena* settlement plan that the Attorney General had precleared in November 1991.

On January 9, 1992, the State filed a motion in the *Terrazas* court to vacate the December 24, 1991 order and to order, instead, the implementation of the newly ratified S.B. 1. On January 10, the court denied the motion, finding that S.B. 1 "fail[ed] to satisfy the Sec. 2 requirements of the Voting Rights Act." *Terrazas v. Slagle*, Civil Nos. A–91–CA–425, –426, Order and Judgment at 12–13 (W.D.Tex. Jan. 10, 1992). The State sought a stay of the December 24, 1991 order pending appeal, but the Supreme Court denied the stay on January 16, 1992. *See Richards v. Terrazas*, —— U.S. ——, 112 S.Ct. 924, 116 L.Ed.2d 924 (1992). The state has appealed both the December 24, 1991 and the January 10, 1991 orders to the Supreme Court, *Richards v. Terrazas*, 60 U.S.L.W. 3554 (U.S. Feb. 18, 1991), and the case is currently pending. *See Id.* at 3560 (questions presented).

On January 10, 1992, the State submitted S.B. 1 to the Attorney General for preclearance under section 5. The Attorney General's deadline for objecting to the proposed plan is March 9, 1992. Under the *Terrazas* plan, the primary election for the Texas Senate is scheduled for March 10, 1992. The candidate qualification period was closed on January 10, 1992, and the "early voting" procedure commenced on February 19, 1992.

## II. DISCUSSION

Under section 5 of the Voting Rights Act, no person may be deprived of a right to vote for failing to comply with a new enactment affecting voting procedure unless the new enactment has been precleared. The jurisdiction covered by the Voting Rights Act has two options: It may submit the proposed procedure to the Attorney General, who may prevent preclearance only by objecting to the proposal within 60 days, or it may seek a declaratory judgment in the U.S. District Court for the District of Columbia that the new enactment "does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color." 42 U.S.C. § 1973c (1988).

Plaintiff's burden in a suit for declaratory judgment under section 5 is twofold: First, it must demonstrate that the redistricting plan does not lead to a retrogression in the position of racial minorities, *see Beer v. United States*, 425 U.S. 130, 141, 96 S.Ct. 1357, 1363–64, 47 L.Ed.2d 629 (1976); second, the State must demonstrate

that the plan is free of a discriminatory purpose. *Richmond v. United States,* 422 U.S. 358, 362, 95 S.Ct. 2296, 2299–2300, 45 L.Ed.2d 245 (1975); *Busbee v. Smith,* 549 F.Supp. 494, 516 (D.D.C.1982), *aff'd mem.,* 459 U.S. 1166, 103 S.Ct. 809, 74 L.Ed.2d 1010 (1983). Even if a change is "ameliorative," it may violate section 5 if it "so discriminates on the basis of race or color as to violate the Constitution." *Beer,* 425 U.S. at 141, 96 S.Ct. at 1364.

In its motion for partial summary judgment, the State makes three arguments: First, it argues that there is no longer a live controversy between the parties because S.B. 1 has already been precleared (in the guise of the *Quiroz/Mena* settlement plan), so there is nothing for this court to do but to declare that the plan is already precleared. Second, the State argues alternatively that this court should exercise its authority under section 5 and preclear S.B. 1 because, as a matter of law, it cannot be retrogressive when compared to the benchmark plan—the *Quiroz/Mena* settlement plan—to which it is identical. Finally, the State argues that S.B. 1 is not subject to preclearance because it is not a change in voting procedures, for the only difference between it and the earlier precleared *Quiroz/Mena* settlement plan is in the manner in which the State adopted the plan.

### A. *Has S.B. 1 Already Been Precleared?*

The Attorney General precleared the *Quiroz/Mena* settlement plan in November 1991. Section 5 is concerned about *changes* in voting procedures that have the purpose or effect of diluting or abridging the right to vote on account of race. *Beer v. United States,* 425 U.S. 130, 141, 96 S.Ct. 1357, 1363–64, 47 L.Ed.2d 629 (1976). The fact that the Attorney General implicitly concluded in November 1991 (by not objecting to the proposal) that the *Qui-*

*roz/Mena* settlement plan was not a change in voting procedures that diluted or abridged minority voting rights tells us only that, when compared with the existing plan in place in November 1991, the *Quiroz/Mena* settlement plan was not considered to be retrogressive. But whether S.B. 1 is retrogressive as of the moment it was submitted to the Attorney General on January 10, 1992 is a different question.

■ Preclearance involves a comparative inquiry into whether the change in voting procedures is retrogressive when compared with the plan that would otherwise be in force and effect. *See Perkins v. Matthews,* 400 U.S. 379, 394, 91 S.Ct. 431, 439–40, 27 L.Ed.2d 476 (1971); *see also City of Lockhart v. United States,* 460 U.S. 125, 132–33, 103 S.Ct. 998, 1003–04, 74 L.Ed.2d 863 (1983) (proper comparison is between new system and system actually in effect prior to adoption of new charter, regardless of what state law might have required). In this case, the plan in effect since December 24, 1991 has been the interim court-ordered *Terrazas* plan. When preclearing the *Quiroz/Mena* settlement plan in November 1991, the Attorney General did not compare it with the *Terrazas* plan, which did not yet exist, but rather to the plan otherwise in effect, which was the plan governing elections to the Texas Senate prior to the 1990 census. The retrogression inquiry may be different in light of the intervening imposition of the *Terrazas* plan. We are thus unable to agree with the State that S.B. 1 has already been precleared.[1]

### B. *Can S.B. 1 Be Precleared as a Matter of Law?*

■ If we were to determine that the benchmark against which S.B. 1 is to be compared is the *Quiroz/Mena* settlement plan, then the fact that the two plans are identical would compel us to conclude, as a

---

**1.** We are not unmindful of the considerable controversy surrounding the adoption of the *Terrazas* plan. *See, e.g.,* Roberto Suro, *Texas Remapping Battle Heats Up, Threatening to Singe the Democrats,* N.Y. TIMES, Jan. 26, 1992, at 14; Sam Attlesey, *Morales Investigates Call Between Lawmaker, Judge,* DALLAS MORNING NEWS, Feb. 1, 1992, at 1A. Nevertheless, issues concerning how or why the *Terrazas* plan was adopted must be separated from the substantive merits of the plan itself. In order for S.B. 1 to be precleared, it must not have the effect of abridging minority voting rights when compared to the *Terrazas* plan.

matter of law, that S.B. 1 is not retrogressive under *Beer.* But that would not be the end of the preclearance inquiry. This court would have to inquire into the second test under section 5—whether a racially discriminatory purpose was among the factors that motivated the State in devising S.B. 1. In order for this court to preclear S.B. 1 under section 5, we would have to engage in an independent inquiry into its constitutionality. The purposes motivating the *Quiroz/Mena* settlement plan are different from those motivating S.B. 1. Any determination of whether S.B. 1 has a discriminatory purpose would require us to conduct some kind of hearing. In any event, it is not an issue that can be resolved on summary judgment.[2]

The Department of Justice argues that the *Terrazas* plan must be deemed the proper benchmark plan for section 5 preclearance purposes. Unless and until it is held to be unconstitutional or otherwise invalid under section 2 of the Voting Rights Act, it is, in fact, the only plan in effect. It would appear that, at the very least, this court must conduct an evidentiary hearing to determine whether S.B. 1 is retrogressive with respect to the *Terrazas* plan. "A section 5 declaratory judgment should be denied when the electoral plan under review is retrogressive in comparison to a court-ordered plan that will be implemented absent approval of the statutory plan." *Mississippi v. Smith,* 541

F.Supp. 1329, 1333 (D.D.C.1982), *appeal dismissed,* 461 U.S. 912, 103 S.Ct. 1888, 77 L.Ed.2d 280 (1983). Inasmuch as a hearing is required, plaintiff cannot now prevail on summary judgment.

■■■ Court-ordered plans are generally *not* subject to section 5 preclearance, *see Connor v. Johnson,* 402 U.S. 690, 691, 91 S.Ct. 1760, 1761, 29 L.Ed.2d 268 (1971) (per curiam). The only court-ordered plans that *are* subject to preclearance are those that reflect the policy choices of the covered jurisdiction. *McDaniel v. Sanchez,* 452 U.S. 130, 153, 101 S.Ct. 2224, 2238, 68 L.Ed.2d 724 (1981); *Wise v. Lipscomb,* 437 U.S. 535, 548, 98 S.Ct. 2493, 2501, 57 L.Ed.2d 411 (1978) (Powell, J., concurring). The record clearly indicates that the court-ordered *Terrazas* plan does *not* represent the policy choices of the State of Texas, so it cannot reasonably be interpreted to be a change in voting procedure submitted by the State. Section 5 does not, therefore, prevent the implementation of the *Terrazas* plan. The fact that the *Terrazas* plan is legally enforceable without section 5 preclearance and that it has, in fact, already been implemented, means that—at least until it is vacated—it is, the only benchmark we have against which to compare any proposed change in voting procedures.[3]

## C. *Is S.B. 1 Subject to Preclearance?*

■■■ While it is true that the principal difference between S.B. 1 and the *Qui-*

---

**2.** At oral argument on February 21, 1992, counsel from the Department of Justice represented to the court that the Attorney General would most likely interpose an objection to S.B. 1 on the grounds that the *Terrazas* court had found it to be violative of section 2 of the Voting Rights Act, 42 U.S.C. § 1973 (1988). *See* Transcript of Motion for Partial Summary Judgment (filed Feb. 24, 1992) at 37–38. We therefore have no expectation that S.B. 1 will be precleared as of March 10, 1992, and we anticipate the need for a full evidentiary hearing. *See Allen v. State Bd. of Elections,* 393 U.S. 544, 549, 89 S.Ct. 817, 823, 22 L.Ed.2d 1 (1969) ("If the Attorney General objects to the new enactment, the State may still enforce the legislation upon securing a declaratory judgment in the District Court for the District of Columbia.").

**3.** The Supreme Court has recognized that, although not binding on this court, the Depart-

ment of Justice's construction of the Voting Rights Act is entitled to considerable deference. *See Presley v. Etowah County Comm'n,* — U.S. —, —, 112 S.Ct. 820, 831, 117 L.Ed.2d 51 (1992). According to Justice Department regulations, court-ordered plans are subject to preclearance by the Attorney General under section 5 "to the extent that they reflect the policy choices of the submitting authority." 28 C.F.R. § 51.18(a) (1991). If a court-ordered plan for which preclearance under section 5 is necessary (that is, a plan that reflects the policy choices of the submitting authority) has not, in fact, been precleared as required, it cannot serve as a benchmark for subsequent changes submitted by the jurisdiction. *Id.* § 51.54(b)(3). Nothing in the regulations precludes the use of a court-ordered plan that is not subject to preclearance under section 5—such as the *Terrazas* plan—as a benchmark for subsequent changes in voting procedures.

*roz/Mena* settlement plan is in the procedural mechanism by which they were "enacted" by the State, that is not the only difference between the two plans. They were enacted and submitted for preclearance in different contexts. There is apparently no dispute that S.B. 1 and the *Terrazas* plan differ such that, if the *Terrazas* plan is the benchmark, S.B. 1 represents a change in voting procedure. For this reason, S.B. 1 would be subject to preclearance under section 5.

But even if the *Quiroz/Mena* settlement plan were deemed to be the proper benchmark, S.B. 1 would still be subject to preclearance. While the retrogression analysis would be simple inasmuch as S.B. 1 and the *Quiroz/Mena* settlement plan are substantively identical, the analysis of whether S.B. 1's purpose was discriminatory cannot be resolved simply by recognizing that the *Quiroz/Mena* settlement plan had been precleared. At the very least, S.B. 1 and the *Quiroz/Mena* settlement plan differ in the way they were enacted. We cannot conclude, as a matter of law, that the purposes behind S.B. 1—passed by the legislature after the December 24, 1991 order in *Terrazas*—were nondiscriminatory simply because the Attorney General determined that the purposes behind the *Quiroz/Mena* settlement plan were not discriminatory. We could make that conclusion only after an evidentiary hearing.

## III. CONCLUSION

For the reasons discussed above, we cannot conclude that S.B. 1 has already been precleared or that S.B. 1 may be precleared as a matter of law or that S.B. 1 need not be precleared because it is not a change in voting procedures.

Accordingly, it is this 25th day of February, 1992,

ORDERED that Plaintiff's motion for partial summary judgment be, and hereby is, DENIED; and it is

FURTHER ORDERED that a status call to consider a schedule for any further proceedings in the case shall take place on *Wednesday, March 18, 1992 at 4:00 pm* in Courtroom No. 17 at the United States Courthouse, Washington, DC 20002.