James H. CORDER and Harry W. Western, on behalf of themselves and all others similarly situated, Plaintiffs-Appellants,

v.

Robert H. KIRKSEY, Individually and as Probate Judge of Pickens County et al., Defendants-Appellees.

No. 76–3601.

United States Court of Appeals, Fifth Circuit.

Nov. 16, 1978.

Edward Still, Birmingham, Ala., Laughlin McDonald, Neil Bradley, Atlanta, Ga., for plaintiffs-appellants.

W. O. Kirk, Jr., Carrollton, Ala., Martin Ray, Tuscaloosa, Ala., for defendants-appellees.

Before TJOFLAT, HILL and FAY, Circuit Judges.

TJOFLAT, Circuit Judge:

Black residents of Pickens County, Alabama, brought this action to challenge the electoral schemes for the county commission, board of education, and Democratic Executive Committee. The plaintiffs contested the districting of all three bodies on the basis that the districts did not satisfy the "one person, one vote" mandate of the fourteenth amendment to the Constitution. *See generally Reynolds v. Sims,* 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). They also questioned the at-large method of electing county commissioners and school board members;[1] the plaintiffs alleged that this feature of the electoral process operated to dilute the black vote in Pickens County. *See generally Nevett v. Sides,* 571 F.2d 209, 215–17 (5th Cir. 1978), *petition for cert. filed,* 47 U.S.L.W. 3247 (U.S. Sept. 22, 1978) (No. 78–492). The plaintiffs' case, therefore, sounded in both genres of reapportionment actions: the "quantitative" (one per-

---

1. The commissioners were nominated by district but elected by the county at-large. All members of the school board were nominated and elected at-large, but all except the chair- man were required to reside in separate districts corresponding to the commission districts. For a more detailed discussion of these schemes, see Part I *infra*.

son, one vote) and the "qualitative" (dilution).[2] *See id.* at 215–16.

The plaintiffs moved for partial summary judgment on their quantitative claims. The district court granted the plaintiffs' motion, enjoined the acts under which the county commission and board of education districts were apportioned, and invalidated the Democratic Executive Committee's apportionment. The court held the case in abeyance "in order to give the legislative process an opportunity to correct outstanding apportionment problems in Pickens County without further judicial intervention." Record, vol. 1, at 53.

The Alabama legislature responded by enacting plans for the county commission and board of education. The legislature redrew the commission districts but continued the at-large method of election. The school board residence districts were abolished, and the members ran at-large as before. See note 1 *supra.* The Democratic Executive Committee resolved itself to comply with the court's order by tying its districting into that to be approved for the county commission.[3]

The court approved the legislature's action as to the county commission but declined to accept the plan for the board of education because the Attorney General of the United States, acting pursuant to section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c (1970), had interposed an objection to that plan. Due to the imminence of the school board elections, the

Court fashioned its own apportionment scheme for the board. Its plan consisted of four single-member districts, corresponding to the nominating districts of the county commission, and one at-large district.

The plaintiffs appeal the judgment of the district court on two grounds. First, they claim that the district court erred in providing an at-large seat for the board of education. Second, they assert that the court was incorrect in validating the commission plan. We hold that the district court failed to set forth sufficiently its justifications for employing the at-large school board seat, and therefore we remand with instructions that the district court make justifying findings. As regards the second ground, we conclude that the court erred by omitting to make adequate findings of fact as to the constitutionality of the commission plan; therefore, we remand to enable the district court to make appropriate findings.

I

The electoral schemes that are the subject of this litigation are unusual and complex. We think it profitable to discuss them in some detail, and, because the county commission districts form the basis for the school board's apportionment, we shall begin with the commission.

A

At the inception of this suit on November 15, 1973, Pickens County was divided into four separate commission districts.[4] Each

---

**2.** The issue in a quantitative reapportionment case is whether population deviations from the ideal or average district are impermissibly large. *See, e. g., Mahan v. Howell,* 410 U.S. 315, 93 S.Ct. 979, 35 L.Ed.2d 320 (1973); *Nevett v. Sides,* 571 F.2d at 215. The theory of the qualitative reapportionment action is more subtle and abstruse. This action alleges that district lines were drawn or erased so as to diminish the political input of a cognizable element of the voting population. Qualitative actions include the familiar gerrymander case, *e. g., Gomillion v. Lightfoot,* 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960); *Robinson v. Commissioners Court,* 505 F.2d 674 (5th Cir. 1974), and the voting dilution case, *e. g., White v. Regester,* 412 U.S. 755, 93 S.Ct. 2332, 37 L.Ed.2d 314 (1973); *Nevett v. Sides.*

**3.** The Democratic Executive Committee adopted a resolution that apportioned eight committee members to each of the four county commission districts established by legislature. The court approved the legislature's districting, and neither the plaintiffs nor the defendants challenge the lines the legislature drew; the plaintiffs appeal goes only to the method of electing the commissioners. Since the executive committee's apportionment ties into a districting scheme that is not contested by the parties to this appeal, the issue of its propriety is not before us.

**4.** The commission districts were drawn by the legislature in 1923, 1923 Ala.Acts No. 156, and were unchanged until the court's order in this suit.

district nominated candidates for its seat. In the general election, however, these nominees ran county-wide; all the voters in Pickens County had the opportunity to vote for a candidate for each seat.[5] The Pickens County Probate Judge served ex officio as the fifth member and chairman of the commission.

As we briefly sketched above, the plaintiffs attacked this scheme at two levels. First, they alleged that the districts from which the commission candidates were nominated were malapportioned. Second, they claimed that the at-large feature of the general election acted to dilute the votes of blacks in Pickens County, who in 1973 constituted forty-two percent of the population and twenty-nine percent of the registered voters of that county.

The district court agreed that the nominating districts did not satisfy the quantitative apportionment standards of the fourteenth amendment, held applicable to local governmental entities by the Supreme Court in *Avery v. Midland County*, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968). Hence, on January 23, 1975, the court invalidated the act under which the county commission had been apportioned and enjoined commission elections until the Alabama legislature drew new districts. The court did not at this time pass upon the constitutionality of the at-large feature of the general elections for county commission.

On August 21, 1975, the Alabama legislature passed an act redistricting the commission, 1975 Ala.Acts No. 594, but not affecting the method of election. The Governor signed the bill on October 1, 1975, and the county commission moved the court to approve Act 594.[6] On March 6, 1976, the court conducted an evidentiary hearing on the merits of the plaintiffs' prayer to enjoin the at-large feature of the commission. In an order dated March 12, 1976, the district court approved Act 594, whose districting met the plaintiffs' approval. The court upheld the at-large method of electing commissioners in the general election and thus denied the plaintiffs' motion for injunctive relief.

The plaintiffs appeal the ruling of the court upholding the at-large method of election. We conclude that the district court failed to make sufficient findings of fact for us to determine whether the at-large feature operated impermissibly to dilute the votes of blacks.

In upholding the at-large aspect of the commission elections, the court made absolutely no findings of fact. It merely stated,

The Court has considered the motions, . . . the pleadings and other papers on file in this case, the briefs and argument of counsel, the applicable law and the evidence received in open court. . . . The Court is . . . of the opinion that the request for relief as to the County Commission made by plaintiffs in their motion for injunctive relief should be denied.

Record, vol. 1, at 76–77. As several cases of this circuit decided since the district court entered its order of March 12 demonstrate, this conclusory language is grossly inadequate.

The most recent applicable precedent is *Blacks United for Lasting Leadership v. City of Shreveport*, 571 F.2d 248 (5th Cir. 1978). In *Shreveport*, a suit challenging the at-large election of that city's commission,

---

**5.** This at-large method of election was established in 1935. 1935 Ala.Acts No. 278. From 1923, when the legislature defined the commission districts, see note 4 *supra*, until 1935, the commissioners were elected from single-member districts. In 1967, the legislature repealed Act 278 but reenacted provisions identical to those of Act 278. 1967 Ala.Acts No. 141.

On October 20, 1967, Act 141 was submitted to the Attorney General of the United States, as provided by § 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c (1970). He approved the Act on December 18, 1972. As the language of § 5 establishes, the Attorney General's approval does not bar an action, such as this, to enjoin procedures subject to § 5 clearance.

**6.** The record reflects that Act 594 was submitted to and approved by the Attorney General pursuant to § 5 of the Voting Rights Act of 1965, see note 5 *supra*. Record, vol. 2, at 47–48.

we found the district court's findings inadequate to satisfy Fed.R.Civ.P. 52(a), which requires the district court, in cases tried without a jury, to "find the facts specially and state separately its conclusions of law thereon."[7] We observed that the need for specific factual determinations has special significance in qualitative reapportionment cases alleging dilution, because such cases are "founded . . . upon 'an intensely local appraisal of the design and impact of the [at-large] district in the light of past and present reality, political and otherwise.'" 571 F.2d at 255 (quoting White v. Regester, 412 U.S. 755, 769–70, 93 S.Ct. 2332, 2341, 37 L.Ed.2d 314 (1973)). In three other dilution cases, Hendrix v. Joseph, 559 F.2d 1265 (5th Cir. 1977), David v. Garrison, 553 F.2d 923 (5th Cir. 1977), and Nevett v. Sides, 533 F.2d 1361 (5th Cir. 1976), we held that district courts had similarly made inadequate findings of fact and remanded the cases for additional findings.

These precedents require us to remand to the district court that aspect of the case concerning the constitutionality of the at-large commission races. We offer the following words to guide the court on remand. The court should apply the precepts set forth by this court sitting en banc in Zimmer v. McKeithen, 485 F.2d 1297 (5th Cir. 1973) (en banc), aff'd on other grounds sub nom. East Carroll Parish School Board v. Marshall, 424 U.S. 636, 96 S.Ct. 1083, 47

L.Ed.2d 296 (1976). Zimmer requires district courts to consider certain primary and enhancing criteria in deciding dilution cases.[8] Essentially, these criteria establish categories of circumstantial evidence that the district court must specifically consider both separately and in the aggregate. As we said in Nevett v. Sides, 571 F.2d 209, 226 (5th Cir. 1978), petition for cert. filed, 47 U.S.L.W. 3247 (U.S. Sept. 22, 1978) (No. 78–492):

The ultimate issue in a case alleging unconstitutional dilution of the votes of a racial group is whether the districting plan under attack exists because it was intended to diminish or dilute the political efficacy of that group. Zimmer establishes certain subissues, the criteria, that a trial court must address before it can reach the ultimate issue of dilution. In essence, the criteria are directions that tell the trial court what type of circumstantial evidence can make out a dilution case. The court must address each subissue, if relevant to the particular case at hand, and determine whether the evidence under that criterion weighs in favor of or against a finding of dilution. The court is next to view the findings under the criteria as a whole, i. e., "in the aggregate," Zimmer, 485 F.2d at 1305, giving due regard to the significance and strength of the finding under each subis-

---

7. We fully recognize that the final sentence of rule 52(a) excepts dispositions of motions from the requirement that findings of fact be specially stated. Although the district court phrased its disposition as a denial of the plaintiffs' "motion" for injunctive relief, the court's action was in reality a resolution of the case on the merits. Indeed, the plaintiffs sought in their original complaint to enjoin the at-large aspect of the county commission elections, and this feature of the commission plan remained unchanged by Act 594. See text accompanying note 6 supra. An evidentiary hearing was held in open court at which testimony and exhibits were received on the merits of the plaintiffs' prayer for injunctive relief. Without consideration of further evidence, the court entered judgment under Fed.R.Civ.P. 54(b). Therefore, we find the mandate of rule 52(a), requiring a special statement of the findings of fact, fully operative here.

8. The Zimmer court established two categories of inquiry in cases alleging dilution of a group's voting power: one composed of "primary" criteria and concerning the history and performance of the at-large plan, the other containing "enhancing" factors and going to the existence of certain systemic devices that may enhance the underlying dilution. The primary factors include the group's access to the political processes, e. g., slating; the responsiveness of the governing body to the particularized needs of the group; the gravity of the state policy behind the at-large method of election; and the present effect of past discrimination upon the group's ability to participate in the electoral process. Zimmer, 485 F.2d at 1305. The enhancing criteria are the size of the at-large district; the portion of vote required for election, i. e., majority or plurality; the presence or lack of an anti-single shot rule; and whether candidates must reside in subdistricts. Id.

sue, to determine if the ultimate inference of dilution is permissible, and, if so, whether the evidence preponderates in its favor.

(Footnote omitted.) *See Shreveport,* 571 F.2d at 251, 255. Given the intensely factual nature of voting dilution cases, we, as an appellate court, can but speculate whether the law was properly applied if we lack sufficiently explicative findings.

To avoid unnecessary delay, we shall retain jurisdiction over the case. We direct that the district court make the required findings within sixty days of the receipt of our mandate, whereupon the parties shall make them a part of the record in this appeal.

### B

We consider next the district court's remedy in apportioning the board of education. Under the legislative provision in force when this suit was brought, 1966 Ala.Acts Spec.Sess. No. 41, the board was composed of five members. Four members were required to reside in the four commission districts (each in a separate district), although they were nominated and elected by the county at-large. The fifth member, the chairman, was elected at-large with no residency requirement.[9]

Act 41 was not submitted to the Attorney General for approval and was not the subject of a declaratory judgment action in the United States District Court for the District of Columbia. Therefore, Act 41 was not legally operative for failure to comply with section 5 of the 1965 Voting Rights Act. *See Connor v. Waller,* 421 U.S. 656, 95

S.Ct. 2003, 44 L.Ed.2d 486 (1975); *United States v. County Commission,* 425 F.Supp. 433, 436 (S.D.Ala.1976) (three-judge court), *aff'd mem.,* 430 U.S. 924, 97 S.Ct. 1540, 51 L.Ed.2d 768 (1977).

By order dated January 23, 1975, the district court declared Act 41 unconstitutional.[10] Subsequently, the legislature enacted a provision retaining the at-large method of electing the school board, 1975 Ala.Acts 4th Spec.Sess. No. 72, which was signed by the Governor on November 14, 1975. Act 72 was submitted to the Attorney General under section 5, and he interposed an objection. Cognizant of the Attorney General's action, the district court heard testimony on the issue of the board's apportionment at the March 6, 1976, hearing. In the order of March 17, the court stated, "The Court is of the opinion that [Act 72] cannot be enforced and declines to approve the plan." Record, vol. 1, at 78. In view of the impending March 19 deadline for qualification for candidacy in the school board elections, the court felt compelled to fashion its own apportionment plan. It is this plan the plaintiffs find objectionable.

The district court's order calls for a five-member board, four of whom are elected from single-member districts corresponding to the approved commission districts. The fifth, the chairman, is elected by the county at-large. The parties do not challenge the district court's invalidation of Act 72; therefore, the only issue before us is the propriety of the court's remedial order.

The Supreme Court has repeatedly admonished district courts required to draw apportionment plans to avoid the employment of at-large districts[11] absent "special

---

**9.** This somewhat unusual scheme resulted from the reduction of the number of high schools in Pickens County from five to four. Prior to the effective date of Act 41, the school board members were elected from five single-member districts, which corresponded to the five high school attendance zones. 1949 Ala.Acts No. 141.

**10.** The court noted that Act 41 had not been approved as required by § 5 and therefore declared the predecessor to Act 41, 1949 Ala.Acts No. 141, unconstitutional as well. See note 9 *supra.*

**11.** Many of the precedents we cite in this discussion concern court-ordered multimember districts. *E. g. Chapman v. Meier,* 420 U.S. 1, 95 S.Ct. 751, 42 L.Ed.2d 766 (1975); *Mahan v. Howell,* 410 U.S. 315, 93 S.Ct. 979, 35 L.Ed.2d 320 (1973). A multimember district, taken individually, is an at-large district: more than one representative is elected by that district as a whole. "Multimember scheme," as the term is generally used, denotes an apportionment plan in which there are coordinate districts, at least one of which has more than one representative. Carpeneti, *Legislative Apportion-*

circumstances." [12]  *East Carroll Parish School Board v. Marshall*, 424 U.S. 636, 639, 96 S.Ct. 1083, 1085, 47 L.Ed.2d 296 (1976); *Chapman v. Meier*, 420 U.S. 1, 21, 95 S.Ct. 751, 763, 42 L.Ed.2d 766 (1975); *see Wise v. Lipscomb*, ── U.S. ──, ──, 98 S.Ct. 2493, 2497, 57 L.Ed.2d 411 (1978); *Connor v. Finch*, 431 U.S. 407, 415, 97 S.Ct. 1828, 1834, 52 L.Ed.2d 465 (1977). Such special circumstances encompass "only the rare, the exceptional, not the usual and diurnal," *Wallace v. House*, 538 F.2d 1138, 1144 (5th Cir. 1976), and single-member districts are the rule "absent insurmountable difficulties." *Connor v. Johnson*, 402 U.S. 690, 692, 91 S.Ct. 1760, 1762, 29 L.Ed.2d 268 (1971);

*Paige v. Gray*, 538 F.2d 1108, 1111 (5th Cir. 1976). The Court's distaste for at-large and multimember remedial districting derives not only from the "practical weaknesses inherent in such schemes," *Chapman v. Meier*, 420 U.S. at 15, 95 S.Ct. at 760; see note 11 *supra*, but also from the fact that "[w]hen the plan is court ordered, there often is no state policy of multimember districting which might deserve respect or deference." *Id.* at 19, 95 S.Ct. at 762.

In only one case has the Supreme Court found the "singular combination of unique factors" that would justify a federal court's employment of an at-large or multimember seat.[13]  *Mahan v. Howell*, 410 U.S. 315, 333,

*ment: Multimember Districts and Fair Representation*, 120 U.Pa.L.Rev. 666, 670 & n. 24 (1972). For example, a state legislature may have several districts whose populations entitle them to more than one legislator. *See, e. g., Whitcomb v. Chavis*, 403 U.S. 124, 91 S.Ct. 1858, 29 L.Ed.2d 363 (1971). Representatives are apportioned among the districts in proportion to their populations. *See, e. g., Fortson v. Dorsey*, 379 U.S. 433, 436–37, 85 S.Ct. 498, 500, 13 L.Ed.2d 401 (1965). *But cf.* Banzhaf, *Multi-Member Electoral Districts—Do They Violate the "One Man, One Vote" Principle*, 75 Yale L.J. 1309 (1966) (arguing on mathematical grounds that proportional distribution over-represents multimember districts). Hence, a multimember plan differs from a purely at-large scheme, as we use the term "at-large," in that the former generally contains more than one district while the latter consists of only one district. (We refer to electoral districts and not to nominating or residential subdistricts.) Another distinction is that an at-large district may have only one at-large representative—the district court's school board plan is an example—but a multimember district, by definition, has more than one representative elected by the district as a whole.

The precedents have applied the same standards to the remedial orders of the district courts, whether those orders create at-large or multimember districts. *East Carroll Parish School Bd. v. Marshall*, 424 U.S. 636, 96 S.Ct. 1083, 47 L.Ed.2d 296 (1976) (at-large); *Connor v. Johnson*, 402 U.S. 690, 91 S.Ct. 1760, 29 L.Ed.2d 268 (1971) (multimember). Both devices suffer from some of the same "practical weaknesses": the number of candidates may confuse voters (assuming more than one at-large representative), residents in particular areas within the district may feel deprived of particularized representation, and cognizable minority groups may be submerged in large electorates. *Chapman v. Meier*, 420 U.S. 1,

15–16, 95 S.Ct. 751, 760, 42 L.Ed.2d 766 (1975); *Whitcomb v. Chavis*, 403 U.S. at 158–59, 91 S.Ct. at 1877. Some criticisms applicable to typical multimember districts, however, are not pertinent to at-large plans. The hypothesis that multimember districts are overrepresented, when compared to coordinate single-member districts, because of bloc voting in the multimember delegation or invalid apportionment theory, *see Whitcomb v. Chavis*, 403 U.S. at 144–48, 91 S.Ct. at 1869–71; Banzhaf, *supra*, is irrelevant to at-large plans. By definition, at-large plans contain no coordinate electoral districts. On the other hand, the benign use of multimember districts may avoid a dilution problem inherent in a comparable at-large scheme; a minority area may be apportioned a coordinate district, thus enabling the minority to elect at least one representative. *Cf. United Jewish Organizations v. Carey*, 430 U.S. 144, 97 S.Ct. 996, 51 L.Ed.2d 229 (1977) (benign gerrymander held constitutional). Although we note these distinctions, which are by no means exhaustive, we leave for another day the question whether a district court might be justified in employing one type of plan but not the other.

**12.** As regards the application of this principle, the Supreme Court has refused to differentiate between remedial provisions ordered in cases disestablishing single-member districts found to violate the quantitative parity principle and those ordered in cases, such as this, striking down at-large systems held to offend the qualitative equality precept. *Wise v. Lipscomb*, ── U.S. ──, ── n. 5, 98 S.Ct. 2493, 2498, 57 L.Ed.2d 411 (1978).

**13.** The Supreme Court has recently upheld an at-large plan enacted by a local districting body in the wake of a federal court's invalidation of a preexisting at-large system. *Wise v. Lip-*

93 S.Ct. 979, 989, 35 L.Ed.2d 320 (1973). In *Howell,* the Court emphasized that the district court had been confronted with "plausible evidence of substantial malapportionment" and "the fear that too much delay would have seriously disrupted [imminent] elections." *Id.* The Court held that the district court had not abused its discretion in employing an at-large district "in fashioning an interim remedy." *Id.*

■ In its March 17, 1976, order the district court below found "unusual circumstances" that it felt justified "adoption of a modified single-member district plan." Record, vol. 1, at 79. The court enumerated three circumstances:

First, the short period of time remaining before the primary election is not sufficient for preparation of a plan dividing Pickens County into five districts of equal population. Secondly, although the four Commissioner's Districts of Pickens County are constitutionally apportioned, the Court declines to order the reduction of the Board of Education to four members. Thirdly, the Board of Education has indicated a preference for having one member primarily responsible for each of the four school attendance zones, and while the zones are not congruent with the Commissioner's Districts, there is a substantial overlap.

*Id.* We find the court's language somewhat opaque, and we are unable to discern whether sufficient justification exists for the employment of the at-large seat. Therefore, we remand this portion of the case for additional findings.

We think the court's first and third circumstances might indeed justify its decision not to apportion the county into five single-member districts. We recognize that in *Mahan v. Howell* the Supreme Court gave substantial justifying weight to the urgency of impending election deadlines. But in *Howell,* the district court was forced to create a multimember district to avoid the

continuation of malapportioned legislative districts. Here, the district court already had before it four commission districts that it had found met quantitative standards. Indeed, in its plan for the school board the court apportioned single-member seats to these four districts. It appears to us that the obvious, simple, and expeditious solution would have been for the court merely to eliminate the at-large seat.

The district court does not tell us why the obvious solution was rejected. The court merely stated, in its second justifying circumstance, that it declined to reduce the size of the board. This gloss is inadequate to substantiate the district court's decision to establish the at-large seat. "[I]t is the reapportioning court's responsibility to articulate precisely why a plan of single-member districts with minimal population variance cannot be adopted." *Chapman v. Meier,* 420 U.S. 1, 27, 95 S.Ct. 751, 766, 42 L.Ed.2d 766 (1975). The court's findings lack this precise articulation.

This is not a case where we feel justified in determining from the record before us whether sufficient reasons exist for deviating from the strong preference for single-member remedial districting. *See Paige v. Gray,* 538 F.2d 1108, 1112 (5th Cir. 1976). *But cf. Wallace v. House,* 538 F.2d at 1144–46 (declining to remand for finding whether special circumstances require court-ordered *at-large* district). Moreover, remand for additional findings on the propriety of the at-large seat will not be a substantial burden on the district court because we have already decided to remand for findings on the issue of the constitutionality of the at-large commission seats.

In conformance with our remand concerning the commission apportionment plan, we shall retain jurisdiction as to the school board issue as well. We direct that the district court make its findings within sixty days of the receipt of our mandate, whereupon the parties shall make them a part of the record in this appeal.

scomb, —— U.S. ——, 98 S.Ct. 2493, 57 L.Ed.2d 411 (1978). Where the local body drafts and enacts a reapportionment plan containing at-large seats, its actions are not governed by the strict "special circumstances" standards applicable to federal district courts fashioning like plans. Local plans need satisfy only the Constitution. *Id.* at ——, 98 S.Ct. at 2500.

## II

For the foregoing reasons, we remand the case to the district court for proceedings as directed by this opinion. We retain jurisdiction over the cause. Let the mandate issue forthwith.

REMANDED.