James H. CORDER, and Harry W. Western on behalf of themselves and all other similarly situated, Plaintiffs-Appellants,

v.

Robert H. KIRKSEY, Individually and as Probate Judge of Pickens County et al., Defendants-Appellees.

No. 76–3601.

United States Court of Appeals, Fifth Circuit.

March 16, 1981.

Edward Still, Birmingham, Ala., Laughlin McDonald, Neil Bradley, ACLU Foundation, Atlanta, Ga., for plaintiffs-appellants.

W. O. Kirk, Jr., Carrollton, Ala., Martin Ray, Tuscaloosa, Ala., for defendants-appellees.

Before TJOFLAT, HILL and FAY, Circuit Judges.

TJOFLAT, Circuit Judge:

This case is before us following the district court's compliance with our last remand order. *Corder v. Kirksey*, 625 F.2d 520 (5th Cir. 1980) (Corder II). We affirm the findings and conclusions of the district court.

Because an understanding of the procedural posture of this case is important for an adequate perspective on our opinion, we shall discuss briefly the history of this litigation. For a more complete exposition of the history of this case, reference should be had to our opinion in *Corder v. Kirksey*, 585 F.2d 708 (5th Cir. 1978) (Corder I).

I

In 1973 the black residents of Pickens County, Alabama brought this action to challenge the constitutionality of the procedures used to elect the Pickens County Commission, the Pickens County Democrat-

ic Executive Committee[1], and the Pickens County Board of Education. This action was based upon allegations that the relevant election districts were impermissibly malapportioned, *see generally Reynolds v. Sims*, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), and that the at-large components of the electoral schemes unconstitutionally diluted the votes of blacks. *See White v. Regester*, 412 U.S. 755, 93 S.Ct. 2332, 37 L.Ed.2d 314 (1973).

Before this action was commenced, the procedure for election of Pickens's five county commissioners was as follows: each of four districts nominated Commission candidates. These nominees then stood for election at large, all voters in the county voting for a candidate for each vacant Commission seat. This resulted in the election of four commissioners, each representing one district. The County Probate Judge filled the fifth Commission seat. Before this suit, the five members of the Board of Education were elected in the following manner: each of four members of the Board were required to reside in one of four districts, thus assuring each district's representation on the Board. Each of these candidates, however, was nominated on a county-wide basis. The fifth Board member was not required to reside in a particular district, and was also nominated at-large. All five members were elected on a county-wide or at large basis.

On the plaintiffs' motion, the district court invalidated the district apportionment scheme employed in both the Commission and Board of Education elections as violative of the "one man, one vote" mandate of *Reynolds, supra.* The court enjoined the election of Commissioners until the Alabama Legislature corrected the constitutional defects in the scheme. Alabama promptly redrew the Commission district lines, but did not alter the at-large feature of the Commission election plan. The plan was submitted to the court and approved. On this appeal, the plaintiffs do not contest the validity of the new district lines. Rather, they argue that the at-large feature of the election of county commissioners is constitutionally offensive.

In regard to the Board of Education, the district court found the time constraints imposed by an impending election to mandate a court-fashioned, rather than state-legislated, remedy. Accordingly, the court provided that the Board of Education would be elected according to the following plan: the Board would remain a five-member board. Four members were to be nominated and elected from four single-member districts corresponding to the constitutionally reapportioned Commission election districts. The fifth member, and Chairman, of the Board was to be elected at large. The plaintiffs readily accepted the district apportionment scheme and, also, the provision that four single-member districts would each elect a single representative. The plaintiffs contested, however, the at-large election of the fifth Board member.

When initially faced with this appeal, we remanded the case to the district court for further findings in regard to both the court's approval of the at-large feature of the Commission election plan and the court's decision to fashion a Board of Education electoral scheme that included an at-large component. We instructed the district court to make findings on the former issue in light of our decision in *Zimmer v. McKeithen*, 485 F.2d 1297 (5th Cir. 1973) (en banc), *aff'd on other grounds sub nom. East Carroll Parish School Board v. Marshall*, 424 U.S. 636, 96 S.Ct. 1083, 47 L.Ed.2d 296 (1976), and on the later issue in light of the requirement that "it is the reapportioning court's responsibility to articulate precisely why a plan of single-member districts with minimal population variance [as opposed to a multimember district or at-large scheme] cannot be adopted." *Chapman v. Meier*, 420 U.S. 1, 27, 95 S.Ct. 751, 766, 42 L.Ed.2d 766 (1975). *See also Connor v. Finch*, 431 U.S. 407, 415, 97 S.Ct. 1828, 1834, 52 L.Ed.2d

---

1. None of the issues presented below concerning the Democratic Executive Committee remain for resolution on this appeal. *See Corder*

*v. Kirksey*, 585 F.2d 708 at 710, n.3 (5th Cir. 1978) (Corder I).

465 (1977); *Mahan v. Howell*, 410 U.S. 315, 333, 93 S.Ct. 979, 989, 35 L.Ed.2d 320 (1973); *Connor v. Johnson*, 402 U.S. 690, 692, 91 S.Ct. 1760, 1762, 29 L.Ed.2d 268 (1971); *Wallace v. House*, 538 F.2d 1138, 1144 (5th Cir. 1976), *cert. denied*, 431 U.S. 965, 97 S.Ct. 2921, 53 L.Ed.2d 1060 (1977).

On remand, the district court made findings and concluded that neither the Commission nor the Board of Education at-large schemes were constitutionally offensive. Record, vol. 1 at 214. When the case was resubmitted to us, however, we found that an intervening Supreme Court decision, *Mobile v. Bolden*, 446 U.S. 55, 100 S.Ct. 1490, 64 L.Ed.2d 47 (1980), had cast doubt on the vitality of this circuit's approach, as articulated in *Zimmer, supra,* to the constitutional adequacy of legislatively enacted at-large schemes of election. Thus, we remanded the case again to the district court for further findings on the Commission election plan in light of the Supreme Court's mandate in *Bolden.* The district court has complied with our request, and has once again found the at-large plan constitutional. Record, vol. 1 at 225. The case is now in a posture that permits the resolution of plaintiffs' appeal.

## II

### A.

Plaintiffs first contend that the district court erred in approving the legislative decision to implement a scheme calling for the at-large election of county commissioners. The plaintiffs argue that the at-large system of election dilutes the votes of blacks, and thus violates the fourteenth and fifteenth amendments to the Constitution.

 It is clear that an at-large election is *not* a *per se* unconstitutional dilution of minority votes. *White v. Regester*, 412 U.S. 755, 93 S.Ct. 2332, 37 L.Ed.2d 314 (1973); *Whitcomb v. Chavis*, 403 U.S. 124, 142, 91 S.Ct. 1858, 1868, 29 L.Ed.2d 363 (1971). Prior to *Bolden,* the law of this circuit required "a showing of racially motivated discrimination" for successful prosecution of a claim of constitutionally impermissible vote

dilution under the fourteenth or fifteenth amendments. *Nevett v. Sides*, 571 F.2d 209, 219, 220 (5th Cir. 1978), *cert. denied,* 446 U.S. 951, 100 S.Ct. 2916, 64 L.Ed.2d 807 (1980). *See also Bolden, supra,* 446 U.S. at 99, 100 S.Ct. at 1517 (1980) (White, J., dissenting). That showing, however, could be made through recourse to inference; inference compelled by "such circumstantial and direct evidence of intent as may be available." *Bolden v. Mobile*, 571 F.2d 238, 246 (5th Cir. 1978) (quoting *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266, 97 S.Ct. 555, 564, 50 L.Ed.2d 450 (1977)), *reversed,* 446 U.S. 55, 100 S.Ct. 1490, 64 L.Ed.2d 47 (1980).

A plurality of the Supreme Court has held that this circuit's previous standards for reaching an inferential determination of discriminatory intent are inadequate. *Bolden, supra,* 446 U.S. at 72, 100 S.Ct. at 1503 (per Stewart, J.). Our failure, however, appears to have turned on the quantum of evidence required for such a finding, rather than upon the substance of the approach itself:

> [T]he Court of Appeals acknowledged that the Equal Protection Clause of the Fourteenth Amendment reaches only purposeful discrimination, but held that one way a plaintiff may establish this illicit purpose is by adducing evidence that satisfies the criteria of its decision in *Zimmer v. McKeithen* .... That approach, however, is inconsistent with our decisions in *Washington v. Davis* ... and *Arlington Heights* .... Although the presence of the indicia relied on in *Zimmer* may afford some evidence of a discriminatory purpose, satisfaction of those criteria is not of itself sufficient proof of such a purpose.

*Id.* (footnote omitted).

This statement, coupled with the plurality's apparent reaffirmation of *White v. Regester,* 412 U.S. 755, 93 S.Ct. 2332, 37 L.Ed.2d 314 (1973), see *id.,* 446 U.S. at 69, 100 S.Ct. at 1501, indicates the plurality held that we must apply a more rigorous test when drawing the inference of racially discriminatory purpose from facts, yet may,

indeed must, continue to reach such a determination by recourse to facts inferentially referable to a discriminatory purpose, albeit facts perhaps almost conclusively referable to that offensive purpose. Moreover, after examining Justice White's dissent in *Bolden*, as well as Justice Blackmun's concurrence in the same case, we believe a clear majority of the Supreme Court would endorse the constitutional validity of recourse to a factually based inferential determination of the existence of racially discriminatory purpose. The problem, simply put, is: What is an adequate quantum of proof?

We admit to an initial perplexity in regard to this issue. Nevertheless, our review of the district court's findings allow us to put off to another day any attempt at a definitive interpretation of *Bolden*. In this case, the district court has found on remand that there are simply no facts in the record probative of racially discriminatory intent on the part of those officially responsible for the Pickens County Board of Commissioners at-large election scheme. Record, vol. 1 at 227. Having reviewed the record, it is apparent that those findings are not clearly erroneous. Therefore, the district court's approval of the legislatively enacted at-large scheme for the election of Pickens County's Commissioners passes constitutional muster, and plaintiffs' first contention must fail.

### B.

We may not so easily dispose of plaintiffs' second contention. Plaintiffs argue that it was constitutionally impermissible for the district court to have fashioned a remedy in regard to the selection of the fifth member of the Board of Education which provided for at-large election. In *Bolden*, a clear majority of the Supreme Court has reaffirmed that " '[S]ingle-member districts [as opposed to at-large, or multimember district schemes] are to be preferred in court-ordered legislative apportionment plans unless the court can articulate a 'singular combination of unique factors' that justifies a different result. *Mahan v. Howell*, 410 U.S. 315, 333, 93 S.Ct.

979, 989, 35 L.Ed.2d 320.' *Connor v. Finch*, 431 U.S. 407, 415, 97 S.Ct. 1828, 1834, 52 L.Ed.2d 465." *Bolden*, 446 U.S. at 66 n.12, 100 S.Ct. at 1499 n.12 (1980). *See also Bolden* at 103–106, 100 S.Ct. at 1520–21 (1980) (Marshall, J., dissenting).

■ This circuit has followed that mandate: "When district courts are forced to fashion reapportionment plans, the general rule is that single-member districts are to be preferred." *Wallace v. House*, 538 F.2d 1138, 1142 (5th Cir. 1976), *cert. denied*, 431 U.S. 965, 97 S.Ct. 2921, 53 L.Ed.2d 1060 (1977). In interpreting this standard, we have maintained that the unique or special circumstances allowing for a court-fashioned election scheme incorporating an at-large element were circumstances encompassing "the rare, the exceptional, not the usual and diurnal." *Id.* at 1144. It is against this standard that the district court's scheme must be judged.

■ The district court offers essentially two reasons for imposition of the at-large plan to elect the fifth Board of Education member. The first is that the short time it possessed to fashion a fair remedy in the face of an impending election dictated the use of the at-large plan as a matter of constitutionally appropriate expediency. Record, vol. 1 at 219. While this might surely justify imposition of an *interim* remedy, *see Wallace v. House*, 538 F.2d 1138, 1145 (5th Cir. 1976), *cert. denied*, 431 U.S. 965, 97 S.Ct. 2921, 53 L.Ed.2d 1060 (1977), *see also Mahan v. Howell*, 410 U.S. 315, 93 S.Ct. 979, 35 L.Ed.2d 320 (1973), we refuse to hold that it is sufficiently weighty to justify a permanently established, court-fashioned at-large election plan.

■ The second 'unique circumstance' is that Alabama has a longstanding policy favoring five-member boards of education. This policy makes good sense given the majority-vote decisionmaking procedure of these boards and the particular Pickens County plan of four school attendance zones and corresponding four high schools, (both schemes established in a successful effort to comply with a desegregation order, *see* Rec-

ord, vol. 1 at 220). Since these zones "substantially overlap" the Commission and Board of Education election districts, it is appropriate that while one Board of Education member should be elected from and represent each of these zones, the necessary fifth member, "responsive to all voters," should be elected on a county-wide basis. Record, vol. 1 at 219–220. As the court viewed the problem, it was faced with either eliminating a structurally necessary, as well as legislatively mandated, fifth Board member, thus providing for a completely single-member district scheme, or reapportioning the Board of Education election districts to allow for five districts, thus providing for a Board member representing a district devoid of a high school and not predominately identified with a particular school attendance zone.

We agree with the district court that a five-member board of education makes good sense in Pickens County. We also agree that the facts as found by the district court reveal circumstances special enough to allow the at-large scheme of election.

Pickens County's four-attendance-zone system was the result of a terminal desegregation order. Thus, those zones are certainly not properly referable to purposeful discrimination. Moreover, although the finding of "substantial overlap" between

the constitutionally apportioned election districts and the school attendance zones is a bit rough, it is, in our judgment, not clearly erroneous. See Record, vol. 1 at 146. These findings, coupled with an understanding that school board members traditionally represent a constituency composed of those who send their children to particular schools, makes the district court's plan for one member to be elected from and represent each of four districts, each roughly approximating a school attendance zone, quite proper.

The matter of the fifth member, while problematic, seems most appropriately resolved as the district court has done. Given Alabama's expressed policy, and the structural desirability of a five-member board, it is proper that a five-member board be maintained. The appropriateness of this goal, when coupled with the unique circumstances justifying maintenance of Pickens County's four-zone school system, and its overlapping constitutionally apportioned four election districts, leads to an acceptance of an at-large scheme. Since reapportionment into five districts is impractical, and because a five-member board is structurally preferable, a county-wide election of the fifth member seems the most appropriate result.[2]

---

2. We have applied what we feel to be the proper test for determining the constitutional adequacy of a court-fashioned at-large scheme. It is necessary, however, for us to offer this brief aside concerning a problem potentially connected with qualitative vote dilution claims such as that of these plaintiffs.

When one person's vote is given more weight than another's, the judicially cognizable constitutional violation is clear. *Reynolds v. Sims*, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). Simply put, the disproportionate distribution of the right to vote is mathematically demonstrable—it is objectively verifiable. A claim of qualitative vote dilution, on the other hand, is quite distinct. The claim there is that, despite each man having an equal vote, as well as having equal access to the voting process, the majoritarian form of election somehow fails to "serve the values of fair representation." *Wallace v. House*, 538 F.2d 1138, 1145 (5th Cir. 1976), *cert. denied*, 431 U.S. 965, 97 S.Ct. 2921, 53 L.Ed.2d 1060 (1977).

[T]he focus in such cases [qualitative vote dilution cases] has been on the lack of repre-

sentation multimember districts afford various elements of the voting population in a system of representative legislative democracy. "Criticism [of multimember districts] is rooted in their winner-take-all aspects, their tendency to submerge minorities ..., a general preference for legislatures reflecting community interests as closely as possible and disenchantment with political parties and elections as devices to settle policy differences between contending interests." *Whitcomb v. Chavis*, 403 U.S. 124, 158–159, 91 S.Ct. 1858, 1877, 29 L.Ed.2d 363.

*Bolden, supra* 446 U.S. at 65, 100 S.Ct. at 1499 (1980).

In the proceedings below, the plaintiffs highlighted this aspect of their claim with particular clarity:

The essence of all "one person-one vote" cases is to make such a system as representative as possible ... John Stuart Mill expressed it best when he wrote, in *Representative Government*:

In a really equal democracy any and every section would be represented, not dispro-

For the foregoing reasons, we must reject plaintiffs' contentions and affirm the judgment of the district court.

AFFIRMED.

portionately, but proportionately. A majority of the electors would always have a majority of the representatives; but a minority of the electors would always have a minority of the representatives. Man for man, they would be as fully represented as the majority.

*Plaintiffs' Memorandum In Support Of Motion For Relief*, Record, vol. 1 at 177.

The Supreme Court has voiced similar sentiments in discussing the preference for single-member district democracy in court-fashioned election plans. It is said that, in the absence of a "singular combination of unique factors," single-member districts are preferred because multimember districting and thus at-large schemes, *see Bolden* at 69–71, 100 S.Ct. at 1501–02 (1980), contribute to making "legislative representatives more remote from their constituents, and tend to submerge electoral minorities and overrepresent electoral majori-

ties . . . ." *Connor v. Finch*, 431 U.S. 407, 415, 97 S.Ct. 1828, 1834, 52 L.Ed.2d 465 (1977).

This stance troubles us a great deal. First, it seems at odds with the *Bolden* plurality's decided emphasis on verifiable discriminatory *intent* as the basis for a finding of constitutionally impermissible vote dilution. Second, and much more troubling, is the implicitly political character of this position. Perhaps it is the judiciary's role to work justice for those discrete, insular minorities at a perceived disadvantage in our system of representative democracy, *see United States v. Carolene Products Co.*, 304 U.S. 144, 152 n.4, 58 S.Ct. 778, 783 n.4, 82 L.Ed. 1234 (1938), but we question whether that role is most effectively served by immersing the court in the resolution of questions which center upon the legitimacy of conflicting theories concerning the nature of a truly representative form of government.